**Paul CASTER, Plaintiff-Appellant,**

v.

**Thomas F. HENNESSEY and St. Mary's Hospital, Defendants-Appellees.**

No. 83–5193.
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

March 23, 1984.

---

"without notice, subject to any notice of right to cure...." 727 F.2d at 1071 (1983).

Steven M. Kramer, Philadelphia, Pa., for plaintiff-appellant.

Gibson & Gibson, P.A., Herbert C. Gibson, Victoria F. Peet, West Palm Beach, Fla., for defendants-appellees.

Before GODBOLD, Chief Judge, RONEY and TJOFLAT, Circuit Judges.

PER CURIAM:

The sole issue presented on this appeal is whether a grievance procedure in an Employee Manual constitutes a written provision of an employment contract in Florida. A Florida court having decided that it does not, we affirm the directed verdict against the plaintiff employee in this diversity suit based on breach of contract.

Plaintiff, Paul E. Caster, was fired from his position as Fiscal Services Director at St. Mary's Hospital, a private, non-profit corporation. He filed suit against the hospital asserting various claims arising from his termination. Although the district court granted a directed verdict for defendant on all five counts of the complaint, this appeal addresses only the plaintiff's claim that the hospital breached a written employment contract.[1] Plaintiff signed no written contract with the hospital. He argues, however, that his employment when viewed in conjunction with the hospital's Employee Manual was governed by a written contract. Plaintiff asserts the hospital breached this contract when the grievance procedure set forth in the manual was not followed in plaintiff's termination.

Plaintiff was offered employment by the hospital in a letter dated September 24, 1975. Five days later, plaintiff accepted the offer by return mail and started work in November, 1975. Neither letter contained a definite term of employment.

In addressing plaintiff's claim that he entered into a written agreement in 1975 evidenced by defendant's written policy manual concerning its employees, the district court noted that

> [T]he evidence is uncontradicted and quite clear that the manual in question, the one that is in evidence as Plaintiff's Exhibit No. 12, was not printed until July of 1977.

> Assuming that the provisions of that manual are identical to those that were previously in effect, the fact remains that Mr. Caster did not receive a copy of this employment manual until September of 1976, which was well after the commencement of his employment.

The court then cited the following quote from *Johnson v. National Beef Packing Company,* 220 Kan. 52, 551 P.2d 779 (1976):

> "Moreover, as previously pointed out, the manual was not published until long after plaintiff's employment. It was only a unilateral expression of company's policies and procedures. Its terms were not bargained for by the parties and any benefits conferred by it were mere gratuities. Certainly, no meeting of the minds was evidenced by the defendant's unilateral act of publishing company policy."

---

1. Count I, a third party claim against Hennessey, the administrator, failed because he was an agent of the hospital, and not a third party. Count II (wrongful discharge), Count III (breach of implied covenant of good faith and fair dealing) and Count IV (breach of unwritten contract) were all barred by the statute of limitations. None of these rulings is contested on appeal. Count V, the one on appeal, was characterized by the district court as a "count that attempts to avoid the effect of the statute of limitations by maintaining that there was a written contract of employment."

The district court then held that in Florida, unless the employment contract specifically provides for a definite term of employment or the term is established by custom, the employment is considered to be indefinite and terminable at the will of either party. *Roy Jorgenson Associates, Inc. v. Deschenes,* 409 So.2d 1188, 1190 (Fla. Dist.Ct.App.1982); *DeMarco v. Publix Super Markets, Inc.,* 360 So.2d 134, 136 (Fla. Dist.Ct.App.1978), *cert. denied,* 367 So.2d 1123 (Fla.1979). The district court found that "the grievance procedures contained in the employment manual could be exercised at the discretion of the defendant" and were not, by these terms, binding on either party.

Nonetheless, plaintiff contends that the hospital is bound by the grievance procedures set forth in its Employee Manual. Plaintiff relies heavily on *Toussaint v. Blue Cross & Blue Shield,* 408 Mich. 579, 292 N.W.2d 880 (1980) spending eight pages of a sixteen page brief in single space quotation from that case. *Toussaint* held that a Blue Cross personnel manual setting forth a disciplinary procedure and prohibiting firings except for just cause presented a jury issue as to express agreement or the employees' legitimate expectation. Apparently failing to properly shepardize that case, neither plaintiff's nor defendant's counsel cited to this Court a Florida case, decided after the district court decision here, which specifically rejects *Toussaint.* In *Muller v. Stromberg Carlson Corp.,* 427 So.2d 266 (Fla.Dist. Ct.App.1983) the employee, recognizing that his employment arrangement did not contain enforceably specific terms relating to tenure and salary increase, argued that the court should find an enforceable inference of these contract terms from the company policy. Rejecting this argument, the court said:

> Appellant argues that we should adopt the law developing in some other jurisdictions which may allow policy statements by an employer to give rise to enforceable contract rights of employees without the parties' explicit mutual agreement. *See e.g., Toussaint v. Blue Cross and Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 (1980); *Protecting At Will Employees Against Wrongful Discharge: A Duty to Terminate Only in Good Faith,* 93 Harv.L.Rev. 1816 (1980). However, while the carefully reasoned opinion in *Toussaint* provides food for profound thought, Florida law does not reflect those views which appear to be based upon a perception of social or economic policy thought to be beneficial. We would have serious reservations as to the advisability of relaxing the requirements of definiteness in employment contracts considering the concomitant uncertainty which would result in employer-employee relationships. A basic function of the law is to foster certainty in business relationships, not to create uncertainty by establishing ambivalent criteria for the construction of those relationships. *Toussaint* converts policy to contractual obligation in the interests of providing employee job security. "Policy" may be defined as an "overall plan embracing ... general goals...." *Webster's New Collegiate Dictionary* (1981). If policy, as so defined, were to govern legal relationships, the law would cease to fulfill the foregoing basic function which includes providing meaningful criteria for predictable consequences. Even the foregoing *Harvard Law Review* Note recognizes that the various courts which have adopted the position Muller asserts in this case "have failed to provide a coherent or complete doctrinal basis for the imposition of new obligations where the contracting parties theoretically could have, but have not, bargained for these obligations." 93 Harv.L.Rev. at 1817. Nor, as a matter of judicial practicality, are we convinced that the solutions offered by that Note, which essentially involve a case by case analysis of particular employer policies, would provide that coherence.

427 So.2d at 270.

This ends the matter for a federal court in a Florida diversity case. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). That other

jurisdictions may follow *Toussaint* is of no moment. *See e.g., Pine River State Bank v. Mettille,* 333 N.W.2d 622 (Minn.1983). Florida law controls. The district court correctly entered a directed verdict for the defendant in this case.

AFFIRMED.