**Myra WELD, Plaintiff,**

v.

**SOUTHEASTERN COMPANIES, INC., A Florida Corporation, George Connely, individually, Leslie Malone, individually, Laurie Winkles, individually, and Doug Simpson, individually, Defendants.**

**No. 98–674–CIV–T–17F.**

United States District Court, M.D. Florida, Tampa Division.

July 8, 1998.

J. Michael Shea, Shea & Associates, P.A., Tampa, FL, for Plaintiff.

John P. McAdams, Youndy C. Cook, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, FL, for Defendants.

*ORDER ON DEFENDANT SOUTHEAST-
ERN'S MOTION TO DISMISS PLAIN-
TIFF'S COUNTS III, V, VI, & VII, IN-
DIVIDUAL DEFENDANTS' MOTION
TO DISMISS, AND DEFENDANTS'
ALTERNATIVE MOTION TO STRIKE
PUNITIVE DAMAGES*

KOVACHEVICH, District Judge.

This cause is before the Court pursuant to Defendant Southeastern Companies, Inc.s ("Southeastern's") Motion to Dismiss Counts III, V, VI, and VII (Docket No. 12), Individual Defendants' Motion to Dismiss (Docket No. 13), and Defendants' Motion to Strike Punitive Damages (Docket No. 14). Motions are based on Plaintiff's Complaint (Docket No. 1), and Plaintiff has responded to the motions via Plaintiff's Response (Docket No. 16).

### STANDARD OF REVIEW

No count within the Plaintiff's complaint shall be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of such claim that would entitle her to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In reviewing a motion to dismiss, the Court is required to view that complaint in the light most favorable to the Plaintiff and accept all allegations as true. *See Colodny v. Iverson, Yoakum, Papiano & Hatch,* 838 F.Supp. 572, 573 (M.D.Fla.1993) (*Citing Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Such a standard will not preclude dismissal, however, when Plaintiff essentially fails to state a claim upon which relief can be granted. *See Modzelewski v. Dugan,* 627 F.Supp. 141, 142 (M.D.Fla.1985).

### POSTURE OF THE CASE

This case is about employment discrimination based upon National Origin.[1] Plaintiff claims that because she is of Hispanic origin, she was abused by her superiors and ultimately fired. According to Plaintiff's complaint (Docket No. 1), the pertinent facts of the case begin on or about November 25, 1996, when she was hired as a Benefits Clerk performing data entry for $6.00 per hour. Plaintiff did not enter into a written contract.

Plaintiff alleges that she heard that Defendant George Connely had made a comment against ethnic people, saying he preferred the front desk be manned by non-ethnics. This comment, combined with an altercation in the office of Plaintiff's supervisor (Defendant Leslie Malone) which purportedly reduced Plaintiff to tears, are the substance of the claims challenged by Defendants. Plaintiff was thereafter fired on November 12, 1997.

Defendants deny the allegations substantiating all causes of action pled. Further, they assert that with respect to counts III, V, VI, and VII, Plaintiff fails to state a claim upon which relief can be granted[2] even supposing her allegations prove true. This Court now considers the position of each party, and assuming Plaintiff's facts are true, must test each disputed claim for validity.

### DISCUSSION

### I. INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

Defendants, George Connely, Leslie Malone, Laurie Winkles, and Doug Simpson (hereinafter "Defendants" for purposes of this section), maintain that Plaintiff's allegations concern their respective positions as *employees* of Southeastern; therefore, they reason that they should be absolved of any *personal* liability for actions arising from acts committed in their capacity as employees. Defendants glean much case support for their position, particularly regarding counts I, II, and IV of Plaintiff's complaint.

---

**1.** The claim under Count I, specifically, is *Discrimination in Employment,* alleged under Fla. Stat. § 760.01 and The Civil Rights Act of 1964, known as 42 U.S.C. § 2000e.

**2.** Federal Rule of Civil Procedure 12(b)(6) allows dismissal for any and all claims which, based upon the facts pled, fail to state a valid cause of action.

Liability for discrimination under either the Florida Civil Rights Act *or* under federal Equal Employment Opportunity laws is reserved for the *employer ultimately causing the harm* (harm in hiring, firing, or hostile work environment).[3] While both laws include the word "agent" in their definitions of *employer*, the Eleventh Circuit has interpreted such inclusion only valid in reference to claims requiring *respondeat superior* liability. *See Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir.1996).

Moreover, as Defendants correctly note, the Eleventh Circuit has squarely addressed the issue in the case *sub judice*—namely supervisor liability. In *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991), the Court noted, "[i]ndividual capacity suits under Title VII are inappropriate. The relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act." *Id.* (*Court's emphasis*). Likewise in *Smith v. Lomax*, 45 F.3d 402, 403 n. 4 (11th Cir. 1995), the Court elaborated on the employee's very narrow scope of liability, noting:

> Read literally, counts two and three seek the same relief against Lomax and Hightower in their individual capacities. The could not, however, be considered her employer; Fulton County is her employer. Accordingly, they cannot be held liable under the ADEA or Title VII. We therefore construe counts two and three as applying only to Fulton County. *Id.*

█ Other cases originating in the Eleventh Circuit have served only to clarify the Court's solid position against individual liability under counts comparable to Plaintiff's

counts I and II.[4] That court has even held that individuals working as *public sector officials* will be held personally liable in such actions.[5] Such analysis leaves this Court with no other option but to accordingly dismiss counts I and II with respect to their application to the Individual Defendants.

Regarding count IV, this *breach of contract* claim is so clearly one against Plaintiff's employer as to impede this Court to seriously consider its validity against these Defendants in their individual capacities. Accordingly, it too shall be dismissed with regard to Individual Defendants.

Discussion of the dismissal of counts III, V, VI, and VII as against the Individual Defendants' will be further addressed briefly in the *conclusion, infra.*

## II. DEFENDANT SOUTHEASTERN'S MOTION TO DISMISS COUNTS III, V, VI, & VII

### A. Count III: Wrongful Termination

Plaintiff's third (3d) count alleges that Defendants wrongfully terminated her not only because of her national origin, but because she *complained* of such discrimination to her superiors. She claims support under *Walsh v. Arrow Air. Inc.*, 629 So.2d 144 (Fla. 3d DCA 1993)[6]; indeed, scholars have noted that a public policy exception could have a dramatically beneficial effect upon the economy of the nation as a whole, for it would bring *security* to employees of minority background and encourage their devotion to their jobs. *See* Note, *Protecting Employees At Will Against Wrongful Discharge: The*

---

3. *See* note # 1, *supra.*

4. *See Cross v. State*, 49 F.3d 1490, 1504 (11th Cir.1995) (wherein the Court also finds that an individual *cannot* be held personally liable in a Title VII action).

5. Defendants cite *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir.1996) (quoting the Court's analogy of Title VII actions to ADEA actions: "The definition of 'employer' in the Disabilities Act is like the definitions in Title VII of the 1964 Civil Rights Act, and in the Age Discrimination in

Employment Act. *This Circuit has previously held that there is no individual responsibility under either of those acts."*) (*Emphasis added*).

6. Plaintiff failed to cite, however, the *reversal* of this case one year later by the Florida Supreme Court. *See Arrow Air, Inc. v. Walsh*, 645 So.2d 422, 424 (Fla.1994) (wherein the Court discusses the narrow situations in which it will apply Fla. Stat. § 112.3187 (the Whistle–Blower's Statute), absent specific legislative intent to the contrary).

*Public Policy Exception,* 96 Harv. L.Rev. 1931, 1951 (June 1983). The implementation of such a *duty* by employers to employees has, in practice, been much more daunting than Plaintiff suggests. *See Id.* at 1947. By necessity, the narrow application of the doctrine affords employees minimal protection in At–Will states. *See Id.*

Rather than choose to elaborate on an area best left to the legislature, this Court must decline implementation of a new and amorphous cause of action based on "public policy." In *Ochab v. Morrison, Inc.,* 517 So.2d 763, 763 (Fla. 2d DCA 1987), a bartender brought an action against his employer for firing him (after the bartender refused to serve a grossly intoxicated individual). The Second DCA found that in an At–Will state such as Florida, the theories of *protection from retaliatory discharge* and *at will employment* were mutually exclusive concepts; as such, the court noted, "[w]e decline to act where the legislature has chosen not to ..." *Id.* at 763, 764. Therefore, this Court must dismiss Count III with regard to all Defendants, as Plaintiff fails to state a claim upon which relief can be granted therein.

*B. Count V: Breach of Implied Covenant of Good Faith & Fair Dealing*

Plaintiff's next challenged claim is based on a theory implied to all Florida employment relationships, as purportedly evidenced in *Greenberg v. Mount Sinai Med. Ctr.,* 629 So.2d 252 (Fla. 3d DCA 1993). *Greenberg* involved two doctors who claimed that their relationship with their patients and colleagues was being challenged due to abusive conduct by a new doctor. *See Id.* at 253.[7]

A case which more clearly reflects Plaintiff's inability to sustain this cause of action is *Future Tech Int'l, Inc. v. Tae Il Media, Ltd.,* 944 F.Supp. 1538, 1569 (S.D.Fla.1996), which elaborated on the elements required for this claim. The elements required for this claim include: "(1) the existence of a business relationship under which the claimant has rights,[8] (2) the defendant's knowledge of the relationship, (3) an intentional and unjustified interference with the relationship, (4) by a third party, and (5) damage to the claimant caused by the interference." *Id.* at 1569, 1570. The essence of this claim rests with *an identifiable and mutual binding agreement or employment contract,* which Plaintiff lacks here. Indeed, the *Tae Il* court noted, "[a]s a general rule, an action for tortious interference with a business relationship [or breach of covenant of fair dealing] *requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered.*" *Id.* at 1570 (*Emphasis added* ).

Only two states have enacted legislation that provides employees with a "nondisclaimable duty of good faith and fair dealing" for their protection: California and Massachusetts. *See The Public Policy Exception,* 96 Harv. L.Rev. at 1936. As an *at-will* employment state, the application of such a doctrine in Florida is tenuous at best when considering that an employee must prove *implied contract* at the very least.[9] Florida's position on *at-will employment* is clear: *an employment contract which fails to contain a definite term or date indicating otherwise will be assumed terminatable*

---

**7.** *Greenberg* is hardly analogous to the case *sub judice,* however; this cause of action (*breach of covenant of good faith & fair dealing* ) revolves around the theory of *tortious interference with a business relationship,* and usually requires claimant to be in a specialized field where a rich client base is essential to the claimant's success.

**8.** An "at will" employment arrangement would fail to satisfy this prong.

**9.** Regarding *implied employment contracts* in an *at-will* state, note that "[t]his type of protection

has not, however, been adopted in most jurisdictions, and even where accepted, it primarily benefits upper-level, managerial employees. Moreover, employees are becoming sophisticated about the legal consequences of the personnel practices." Note, *Protecting Employees At Will Against Wrongful Discharge: The Public Policy Exception,* 96 Harv. L.Rev.1931, 1935 (June 1983).

*at-will, at the discretion of either party.* See *Caster v. Hennessey,* 727 F.2d 1075, 1077 (11th Cir.1984), (*Citing Roy Jorgensen Assoc., Inc. v. Deschenes,* 409 So.2d 1188 (Fla. 4th DCA 1982)). As Plaintiff was terminated within her one-year probationary period, she falls within the period of time wherein her employment could have been terminated either by her *or* by her employer. Therefore, her action under this theory must fail.

## C. Count VI: Intentional Infliction of Emotional Distress

Plaintiff claims that the treatment by her superiors (especially regarding a particular altercation with her then-supervisor, Leslie Malone) was so egregious as to entitle her to damages under the cause of action "intentional infliction of emotional distress." This Court disagrees.

█ Seeking to distinguish her case from persuasive precedent, Plaintiff cites *State Farm Mutual Auto. Ins. Co. v. Novotny,* 657 So.2d 1210, 1212–14 (Fla. 5th DCA), wherein an employee was reprimanded by her employer at a site other than her place of employment. Despite the alleged trauma that the employee suffered, the court there found she had failed to meet the very high threshold required to establish a cause of action under such a claim. *See Id.* Similarly, just as the *State Farm* court found that such a reprimand (even off-premises) was well within the purview of the employer, this Court agrees that even based on Plaintiff's version of the facts,[10] the employer acted with propriety considering the *At–Will* status of the relationship.[11] Accordingly, with regard to Count VI, the action is dismissed.

## D. Count VII: Negligent Supervision

█ Plaintiff's final claim is essentially pled as *negligent infliction of emotional distress.* As such, unlike *intentional infliction of emotional distress,*[12] Plaintiff must satisfy the *impact requirement.* The Florida Supreme Court has failed to overrule this requirement;[13] accordingly, it will be followed. Several courts are in agreement with this decision, including *Champion v. Gray,* 420 So.2d 348, 349 (Fla. 5th DCA 1982), which held, "[o]nly the Florida Supreme Court can overrule the 'impact rule' and we shall respect the rule until our Supreme Court sees fit to change it." Therefore, Plaintiff's claim of *negligent supervision* must be dismissed for failure to state a claim upon which relief can be granted.

## CONCLUSION

This court finds that the Individual Defendants named in this case have been named erroneously by the Plaintiff regarding Counts I, II, and IV. As the remaining claims (III, V, VI, and VII) have been exposed as deficient, they are dismissed in their entirety, mooting any necessity to address their relevance to the Individual Defendants. Therefore, with regard to the Individual Defendants (George Connely, Leslie Malone, Laurie Winkles, and Doug Simpson), all Counts are dismissed with prejudice.

10. Naturally, this Court assumes all of Plaintiff's facts are true in considering whether or not to dismiss any of her causes of action.

11. *See also Mundy v. Southern Bell Tel. & Tel. Co.,* 676 F.2d 503, 503 (11th Cir.1982) (wherein the Court dismissed a claim brought by employee who allegedly suffered severe distress after he was harassed by supervisory employees for *not* taking part in a fraudulent scheme; the Court held that he had "**failed to allege conduct so outrageous as to constitute intentional infliction of emotional distress under Florida law**") (*Emphasis added*); *Clemente v. Horne,* 707 So.2d 865, 866 (Fla. 3d DCA 1998) (the court *followed* the decision in *State Farm,* noting that the conduct alleged must be *so outrageous in nature as to cause a reasonable person to exclaim, "outrageous!"*) (*Quoting* Restatement (Second) of Torts (1965)); *Kent v. Harrison,* 467 So.2d 1114 (Fla. 2d DCA 1985) (deciding a IIED claim *after* the Florida Supreme Court recognized such a claim exists; the court still failed to find sufficiency in this claim, even where Plaintiff alleged vicious phone calls were made by employer).

12. *See State Farm,* note # 11, *supra.*

13. *See Gilliam v. Stewart,* 291 So.2d 593, 595 (Fla.1974).

Likewise, Counts III, V, VI, and VII are dismissed with prejudice as against Defendant Southeastern, leaving Plaintiff's Counts I, II, and IV intact against Southeastern. As punitive damages were only available under the claims now dismissed, this Court need not address Defendants' Motion to Strike Punitive Damages, as this issue is moot as well. Accordingly, it is

**ORDERED** that the Individual Defendants' Motion to Dismiss (Docket No. 13) is **GRANTED**, and that Defendant Southeastern's Motion to Dismiss Counts III, V, VI, and VII (Docket No. 12) is **GRANTED**.