**William CARO, Jr., Plaintiff,**

v.

**MIAMI–DADE COUNTY, Department of Corrections, Inc., and James Brooks, Defendants.**

No. 98–2917–CIV.

United States District Court,
S.D. Florida.

April 12, 2000.

Cornelius Shiver, Law Offices of Cornelius Shiver, Miami, FL, for plaintiff.

Thomas A. Tucker Ronzetti, Assistant County Attorney, Dade County Attorney, Miami, FL, for defendants.

***ORDER GRANTING DEFENDANT MIAMI–DADE COUNTY AND DEFENDANT JAMES BROOKS' MOTIONS FOR SUMMARY JUDGMENT***

HOEVELER, Senior District Judge.

THIS CAUSE comes before the Court upon (1) Defendant Miami–Dade County's Motion For Summary Judgment, filed October 7, 1999, and (2) Defendant James Brooks' Motion For Summary Judgment, also filed October 7, 1999. Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment was filed with leave of Court on December 23, 1999. All parties filed their respective

Statements Of Uncontested Facts, per S.D.Fla.L.R. 7.5. Having been advised in the premises, it is hereby ORDERED AND ADJUDGED that

- Defendant Miami–Dade County's Motion For Summary Judgment is **GRANTED;**
- Defendant James Brooks' Motion For Summary Judgment is **GRANTED.**

## Background

Plaintiff is an American-born male of Puerto Rican ancestry who has been a correctional officer with Defendant Miami–Dade County ("County") since 1984. To date, Plaintiff still works for County. Defendant James Brooks ("Brooks") was one of Plaintiff's supervisors during the periods material to Plaintiff's Complaint. Count I is brought against both Defendants for alleged violations of 42 U.S.C. § 1981 and Title VII, 42 U.S.C. § 2000 et seq. Counts II–IV are pendent state law claims against County only: Count II alleges negligent hiring, Count III asserts negligent supervision, and Count IV is a negligent retention claim.

## ANALYSIS

### Standard on Summary Judgment

The Federal Rules of Civil Procedure provide for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). "Material" facts are those that relate to the substantive law of each

cause of action. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one about which a reasonable fact finder could find for the nonmoving party. *Id.* On summary judgment, the district court must view all of the evidence " 'in the light most favorable to the nonmoving party.' " *Continental Casualty Co. v. Wendt,* 205 F.3d 1258, 1261 (11th Cir.2000) (quoting *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988)).

The parties moving for summary judgment bear the initial burden "to show the district court, by reference to materials on file, that there is no genuine issue of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). If this burden is met, the nonmoving party may defeat a grant of summary judgment by demonstrating "that there is indeed a material issue of fact that precludes summary judgment." *Clark,* 929 F.2d at 608. The nonmoving party satisfies his burden of production in this respect by showing "sufficient evidence of each and every element that he or she must prove." *Wendt,* 205 F.3d 1258, 1261 (citing *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1528 (11th Cir.1987)). Neither the moving nor nonmoving parties on summary judgment may rely on the pleadings alone. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### Count I

Plaintiff sues both County and Brooks in Count I section 1981 and Title VII. County asserts that a section 1981 suit cannot stand against a county.[1] For his own part,

---

1. County argues that Plaintiff's national origin discrimination claim, unlike a racial discrimination claim, is not recoverable under section 1981. This argument does not provide a basis for the grant of summary judgment as Plaintiff alleges that Defendants "subjected Plaintiff to *racial* discrimination consisting of, but not limited to, racial slurs about Puerto–Rican–Americans." Complaint at ¶ 16 (emphasis added).

 Similarly, in his opposition to summary judgment, Plaintiff frames his claim in terms

of discrimination premised on race, and not necessarily national origin. *See* Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment at 1–2. While the sociological constructs that differentiate "national origin" from "race" are complex and beyond the scope of this Order, the Court notes that Plaintiff has not described his race other than to state that he is of Puerto Rican ancestry. *But see Cariddi v. Kansas City Chiefs Football Club, Inc.,* 568 F.2d 87, 88 (8th Cir.1977) (discussing section 1981 cases in which Puerto Rican plaintiff

Brooks asserts the defense of qualified immunity against this claim. As a general rule, this Court would normally address the issue of whether Brooks violated section 1981 before turning to the question of Brooks' qualified immunity defense. *See Bishop v. Avera,* 177 F.3d 1233, 1236 n. 7 (citing *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). Because Plaintiff emphasizes in his opposition to summary judgment that he is suing County and Brooks in Count I for violating Title VII by creating a hostile work environment,[2] the Court now turns to a discussion of Plaintiff's claim of Title VII discrimination.

■ Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish his employer's violation of Title VII by showing that the discriminatory actions have created a "hostile or abusive work environment." *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *see also Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 2265, 141 L.Ed.2d 633 (1998) (contrasting hostile work environment claims from quid pro quo claims in Title VII context). The prima facie requirements necessary to establish a hostile work environment claim require that (1) Plaintiff belongs to a protected group, (2) Plaintiff was subjected to unwelcome racial harassment, (3) the harassment was based upon Plaintiff's race, and (4) the harassment affected the conditions of Plaintiff's employment. *See Fleming v. Boeing Co.,* 120 F.3d 242 (11th Cir.1997).

The critical issue in the instant case is the fourth element of the prima facie test—whether Defendants' harassment of Plaintiff affected the conditions of Plaintiff's employment. Plaintiff can satisfy this element by showing "that the harassment was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *Watkins v. Bowden,* 105 F.3d 1344, 1355 (11th Cir.1997) (citing *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 20–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

In support of its motions for summary judgment, Defendants filed with the Court Plaintiff's deposition transcript. In opposition to Defendants' motions for summary judgment, Plaintiff provided only excerpts from that same deposition. Because Plaintiff identifies so few incidents as evidence of his allegedly hostile work environment, the Court will summarize each of those incidents here: (1) Someone in the workplace posted an offensive cartoon depicting an African American. Brooks told Plaintiff that such behavior would not be permitted. Brooks then instructed Plaintiff to sign the back of the cartoon, ostensibly in recognition that Plaintiff understood that posting offensive cartoons was impermissible. Plaintiff refused to sign. Then Brooks called Plaintiff a dumb, f***ing jackass or a "stupid, f***ing d***head"; (2) Brooks once said to Plaintiff, "Ven aqui," which means "Come here" in Spanish. Plaintiff considered that to be demeaning; (3) In 1994 or 1995, someone had posted an image of Fidel Castro in the workplace. Plaintiff considered that incident to be harassing, yet Plaintiff did not complain about the picture nor did he remove the picture while he was on supervisory duty; (4) An 11 ½ × 8–inch sheet of paper containing a religious statement was posted on a wall in Brooks' office. Plaintiff was offended by the statement and felt it was improper. Plaintiff complained to

claimed national origin discrimination and not racial discrimination).

**2.** Plaintiff's Complaint titles Count I as "Violation of Section 1981," but Plaintiff explicitly alleges Title VII violations against Defendants in his Complaint at ¶¶ 1, 2a, as well as implic-

itly at ¶ 28. *See also Ferrill v. The Parker Group, Inc.,* 168 F.3d 468, 472 (recognizing that "the test for intentional discrimination in suits under § 1981 is the same as the formulation used in Title VII discriminatory treatment cases.") (citation omitted).

the EEOC, Lt. Wright, and Cpt. Kovacs; (5) Some unknown person or persons in the workplace paired certain employees' names with photographs of other people. Plaintiff's name was attached to a photo of an Asian girl. Plaintiff believes that this implied that he was homosexual or that he was "Oriental because of the slanting of my eyes"; (6) Brooks told Plaintiff that a malfunctioning copy machine was not working because it was Puerto Rican.

The Court's own reading of Plaintiff's deposition transcript uncovered three additional incidents that evidence a tense relationship between Brooks and Plaintiff. After Plaintiff returned from Puerto Rico for his father's funeral, Brooks asked Plaintiff if he enjoyed his "vacation." On another occasion, Brooks hung up on Plaintiff when Plaintiff called Brooks' home seeking an extra day of vacation. At another time, Brooks was present when Plaintiff's coworker, Officer Nunez, told Plaintiff to kill himself if he could not handle the pressure at work. While Brooks may have acted callously toward Plaintiff at these times, bad manners alone do not a Title VII discrimination claim make.

 Plaintiff need not show "tangible psychological injury" to sustain his hostile work environment claim; however, he needs to show more than "merely offensive" behavior on the part of his employer. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). This Plaintiff has not accomplished. The Court finds that Plaintiff's claims of racial discrimination in the instant case fall far short of the "severe or pervasive" standard. While the Court does not employ a "mathematically precise test," *Harris*, 510 U.S. at 22, 114 S.Ct. 367, it may evaluate several factors to determine whether Plaintiff has established a viable hostile work environment claim. Among these factors are the following: the frequency of the discriminatory conduct, the severity of that conduct, the physical threat or humiliation caused by the actions, and the degree to which the behavior interferes with an employee's work performance. *Id.* at 23, 114 S.Ct. 367.

The incidents detailed above are relatively infrequent in light of the six or so years Plaintiff had spent working under Brooks' supervision before he filed this lawsuit. In addition, these occurrences do not appear to show physical threats or particular humiliation directed at Plaintiff as a Puerto Rican. Moreover, Plaintiff presents no evidence that his work performance has been affected in any way by this alleged discrimination. Rather, these events show only Plaintiff's sensitivity and propensity to take offense at isolated comments directed not to his Puerto Rican race/identity, but rather to issues as varied as religion (the paper in Brooks' office), politics (the picture of Castro), and language/culture (Brooks' use of Spanish). Plaintiff was offended by each of these statements, but taken as a whole, a reasonable person could not find that these instances are sufficiently "severe" or "pervasive" to sustain a charge of racial discrimination. *See Harris*, 510 U.S. at 21–22, 114 S.Ct. 367 (identifying subjective and objective tests in hostile work environment cases).

Indeed, the implication of race, insofar as Plaintiff as described his race as Puerto Rican, is tenuous at best. With respect to the derogatory representation of an African American in a cartoon, Brooks himself told Plaintiff that posting of such a racially offensive cartoon is impermissible. Even granting that Brooks expressed anti-Puerto Rican animus when he commented about the non-working copy machine being Puerto Rican, this sole comment respecting Plaintiff as Puerto Rican is hardly "pervasive" for Title VII purposes.

Because the Court finds that summary judgment should be granted as to Count I, the Court now turns to Counts II–IV, which are state law claims.

### Counts II–IV

Plaintiff brings Counts II–IV against County alone. These Florida state law

claims allege the County's negligent hiring (Count II), negligent supervision (Count III), and negligent retention (Count IV) in connection with the events described earlier in this Order. Plaintiff acknowledges that the Court possesses only "pendent jurisdiction to redress" these three remaining claims. *See* Complaint at ¶ 2e. In exercising its supplemental jurisdiction, *see* 28 U.S.C. § 1367, the Court holds that summary judgment shall be entered as to each of these causes of action.

■ County argues that Counts I–IV fail as a matter of law because Plaintiff seeks damages for emotional distress, Florida law requires that emotional distress in a negligence claim "must flow from physical injuries the plaintiff sustained in an impact" *R.J. v. Humana of Fla., Inc.,* 652 So.2d 360, 362 (Fla.1995) (describing Florida's "impact rule"), and Plaintiff has made no showing of any physical injuries he sustained as a result of County's negligence. The Court observes that Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment does not respond to County's motion for summary judgment as to Counts II–IV. However, even assuming that Plaintiff's Complaint complies with the requirements of Florida's impact rule to sustain Counts II–IV for motion to dismiss purposes, *see Weld v. Southeastern Companies, Inc.,* 10 F.Supp.2d 1318, 1323 (M.D.Fla.1998) (granting motion to dismiss negligent supervision cause of action for failure to state a claim where plaintiff failed to satisfy Florida's impact rule in her complaint), a non-moving party may not rely on the pleadings alone in opposing summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Rather, once the burden shifts to Plaintiff to show a genuine issue of material fact, as has happened here, Plaintiff must present evidence in the form of affidavits, depositions, answers to interrogatories, or admissions on file. *See* Fed.R.Civ.P. 56(c).

The Court has read the entire deposition transcript of Plaintiff (with accompanying exhibits), which Defendants filed in support of their motions for summary judgment. The transcript does not present any genuine issue of material fact as to *any* element of Plaintiff's claims for negligent hiring, negligent supervision, or negligent retention. Although Plaintiff seeks damages other than emotional distress,[3] he does not offer any evidence beyond his Complaint that he has endured any damages whatsoever. Accordingly, Plaintiff has failed to carry his burden as to Counts II, III, and IV. Summary judgment is GRANTED as to each count of Plaintiff's Complaint.

---

**3.** Plaintiff alleges impairment of reputation; stress, anxiety, and emotional distress; significant past and future pain and suffering; and medical expenses. *See* Complaint at ¶¶ 44 (Count II), 51 (Count III), and 58 (Count IV).