# Third District Court of Appeal

## State of Florida

Opinion filed November 9, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-2588
Lower Tribunal No. 10-60245
_____

## G4S Secure Solutions USA, Inc., etc.,
Appellant,

vs.

## Taliya Golzar,
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Jose M. Rodriguez, Judge.

Hicks, Porter, Ebenfeld & Stein, P.A., and Mark Hicks and Shannon Debus-Horn; Kenny Nachwalter, P.A., and Jeffrey T. Foreman and Victoria Wilson, for appellant.

The Ferraro Law Firm, P.A., and David A. Jagolinzer; O'Quinn Stumphauzer & Sloman, and Jeffrey H. Sloman and Christopher E. Gottfried, for appellee.

Before SHEPHERD, ROTHENBERG and SCALES, JJ.

SCALES, J.

Appellant, defendant below, G4S Secure Solutions USA, Inc. ("Wackenhut") appeals a final judgment rendered after a jury verdict in favor of Appellee, plaintiff below, Taliya Golzar ("Golzar"). Because Florida's impact rule precludes recovery of damages in tort cases for emotional distress absent any physical injury, we reverse.

## I. Facts

### A. *Wackenhut hires Owens as a security officer*

Wackenhut is a private security company providing security services throughout the United States, including Miami-Dade County. In November of 2008, Eric Owens ("Owens") submitted an employment application for a position as a security guard with Wackenhut. A Wackenhut human resources manager interviewed Owens, and following the interview, Wackenhut hired Owens as a security officer. Owens successfully passed Wackenhut's training program, drug screening, and medical examination, and received the applicable security guard licenses from the State of Florida. In Owens's employment application he marked the "no" box in response to a question asking whether Owens had any criminal convictions.

Wackenhut, through a subsidiary, also performed a background check on Owens, which revealed that Owens had been convicted in California for a misdemeanor disorderly conduct charge in 2004, but the background check

2

revealed no details about the offense. Wackenhut never asked Owens why he had not disclosed the offense on his employment application, and Wackenhut did not attempt to obtain any of the paperwork from Owens's 2004 California conviction. As it was later revealed, the specific offense for which Owens was convicted under California's disorderly conduct statute was prowling and peeking into an inhabited building.

### B. *The incident*

In June of 2010, Wackenhut assigned Owens to its security account for Old Cutler Bay, a residential community in Miami-Dade County. At around 2:40 a.m. on August 15, 2010, while Owens was on patrol duty in Old Cutler Bay, Owens used his cellular phone to record a video of Golzar, who was about to enter her senior year in high school, in a state of undress. Golzar observed Owens's hand holding up his cellphone pressed on her window and, being quite alarmed at the sight, banged on the window and alerted others in her home of the incident.

After recording the video of Golzar, Owens fled from the Golzar home and drove back to the guardhouse in Old Cutler Bay. Shortly after Owens's return to the guardhouse, one of Golzar's friends drove to the guardhouse and informed Wackenhut officers of the incident. Owens returned to Golzar's home, ostensibly to "investigate" the incident he caused. Owens misrepresented to Golzar's family that Owens had seen a prowler and that he had called the police.

When the police did not arrive at Golzar's home, Golzar's mother phoned the police and learned that, despite Owens's statement to the contrary, the police had not been notified of the incident. Ultimately, the police recovered Owens's phone, which Owens had hidden in a retaining wall near his car. Owens came to the police station and confessed to videotaping Golzar on that night and on two prior occasions. Owens was immediately terminated by Wackenhut and ultimately convicted of two criminal counts of video voyeurism.[1]

### C. *Golzar's claims against Wackenhut*

On November 18, 2010, Golzar filed the instant lawsuit against Wackenhut seeking both compensatory and punitive damages. Golzar claimed Wackenhut had negligently hired, retained, and supervised Owens. The basis of Golzar's negligence claims was that Wakenhut should have known Owens had been convicted of peeking and prowling in California in 2004, and thus, Wackenhut was negligent in allowing Owens to work as a security guard in residential areas.

### D. *Golzar's damages*

Golzar sought compensatory, non-economic damages for the past and future emotional trauma caused by the incident. At trial, there was no evidence that Golzar had suffered any type of physical injury, and it was undisputed that Owens <u>never touched or had any</u> other physical contact with Golzar. Golzar did claim that,

---

[1] There is no evidence that the videos were ever transferred from Owens's phone onto a computer, uploaded to the Internet, or otherwise shared with anyone.

4

following the incident, she experienced some generalized illnesses and physical problems including weight gain, nightmares, and feelings of anxiety.

After the incident, in her senior year in high school, Golzar ran track, played soccer, and excelled academically. She was accepted at Duke University and awarded a full scholarship. At Duke, she also was involved in a number of extracurricular activities and excelled academically.

After trial, the jury returned a verdict in Golzar's favor finding that Wackenhut had negligently hired, retained, and supervised Owens. The jury awarded Golzar $1,332,588.08 in damages.[2]

### E. *Wackenhut's motions for summary judgment and directed verdict*

Prior to trial, Wackenhut moved for summary judgment on the ground that Florida's impact rule precluded recovery of the purely non-economic damages for emotional trauma that Golzar had suffered and might suffer in the future. Wackenhut made a similar motion for directed verdict at the conclusion of Golzar's case in chief, and in post-trial motions.[3] The trial court denied all of Wackenhut's "impact rule" motions.

---

[2] The basis for the jury's damage award was, as Golzar's counsel argued in closing, equal to the cumulative hourly pay that Owens would have received as a Wackenhut employee from the date of the incident until the day Owens would reach the age of sixty-five.

[3] Wackenhut also made a post-trial motion pursuant to section 768.74 of the Florida Statutes seeking a remittitur of the non-economic damages awarded. Because of our decision, we need not, and do not, reach Golzar's argument that Wackenhut's motion for remittitur was untimely.

Wackenhut timely brings this appeal of the trial court's order denying its Motions to Set Aside the Jury Verdict and Judgment and to Enter Judgment in Accordance with its Motion for Directed Verdict and Amended Motion for New Trial.

## II. Standard of Review

When reviewing a pure question of law, such as the trial court's denial of Wackenhut's impact rule motions, our standard of review is de novo. Keck v. Eminisor, 104 So. 3d 359, 363 (Fla. 2012).

## III. Analysis

The issue before this Court is whether Florida's impact rule precludes Golzar from recovering against Wackenhut purely non-economic damages for emotional distress for the torts of negligent hiring, negligent retention, and negligent supervision.

### A. *The impact rule in Florida*

Florida's impact rule provides that "before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact. The rule actually requires some impact on the plaintiff, or, in certain situations, the manifestation of severe emotional distress such as physical injuries or illness." Fla. Dep't of Corrs. v. Abril, 969 So. 2d 201, 206 (Fla. 2007) (citations and internal

6

quotation marks omitted). The policy behind Florida's impact rule is that "compensatory damages for emotional distress are 'spiritually intangible,' are beyond the limits of judicial action, and should be dealt with through legislative action rather than judicial decisions." R.J. v. Humana of Fla., Inc., 652 So. 2d 360, 362 (Fla. 1995).

The Florida Supreme Court has crafted limited exceptions to Florida's impact rule, recognizing that certain torts are necessarily devoid of physical harm and are of such a nature that the only foreseeable damages resulting from those torts are emotional damages that are non-economic in nature.

For example, in Abril, the Court recognized that ". . . the only reasonable damages arising from a breach of [Florida's HIV confidentiality statute] are emotional distress . . . ." 969 So. 2d at 207-08. Similarly, our Supreme Court has noted that Florida's impact rule does not apply to any intentional tort such as defamation, invasion of privacy and intentional infliction of emotional distress. Rowell v. Holt, 850 So. 2d 474, 479 (Fla. 2003).

B. *Impact rule application to the torts of negligent hiring, negligent retention, and negligent supervision*

Against this backdrop, we analyze the torts of negligent hiring, negligent retention, and negligent supervision,[4] i.e., the three causes of action alleged against

---

[4] "A claim for negligent hiring arises when, before the time the employee is hired, the employer knew or should have known that the employee was unfit. Liability in

Wackenhut by Golzar. Specifically, we must determine, as a matter of first impression, whether to include these torts as limited exceptions to Florida's impact rule. At the outset, we note that we have been provided no Florida case in which a court has not applied the impact rule to claims of negligent hiring, negligent retention, and negligent supervision.

In fact, several federal courts have applied Florida's impact rule to preclude a plaintiff's recovery of purely non-economic damages for these torts. See Resley v. Ritz-Carlton Hotel Co., 989 F. Supp. 1442, 1449 (M.D. Fla. 1997) (holding that a plaintiff's negligent retention and hiring claims failed at summary judgment because the plaintiff did not allege physical injury, thereby satisfying Florida's impact rule); see also Jenks v. Naples Cmty. Hosp., Inc., 829 F. Supp. 2d 1235, 1257-58 (M.D. Fla. 2011) (granting defendant's summary judgment on negligent supervision and retention claim where plaintiff failed to allege an impact and failed to provide any evidence showing that emotional distress aggravated plaintiff's breast cancer); Weld v. Se. Cos., Inc., 10 F. Supp. 2d 1318, 1323 (M.D. Fla. 1998) (granting motion to dismiss negligent supervision cause of action for failure to state a claim where plaintiff's complaint failed to satisfy the impact rule); Degitz v.

these cases focuses on the adequacy of the employer's pre-employment investigation into the employee's background. Liability for negligent supervision or retention, however, occurs after employment begins, where the employer knows or should know of an employee's unfitness and fails to take further action such as investigating, discharge or reassignment." Malicki v. Doe, 814 So. 2d 347, 362 n.15 (Fla. 2002) (internal citations omitted).

S. Mgmt. Servs., Inc., 996 F. Supp. 1451, 1462 (M.D. Fla. 1998) (applying Florida's impact rule to plaintiff's negligent retention claim and granting defendant's summary judgment "to the extent [p]laintiff seeks damages for emotional distress").

Additionally, in addressing whether Florida's impact rule applies to the tort of negligent training, this Court has expressly held that the impact rule precludes recovery for such purely non-economic damages. Miami-Dade Cty. v. Cardoso, 922 So. 2d 301 (Fla. 3d DCA 2006).

C. *Abril*

Nevertheless, Golzar argues that the Florida Supreme Court's decision in Abril, which post-dates our decision in Cardoso, expands by implication the exceptions to Florida's impact rule. We do not read Abril so broadly.

In Abril, a medical lab, contracted by Florida's Department of Corrections, faxed false HIV test results of a Department of Corrections employee in violation of Florida's HIV confidentiality statute, section 381.004 (3)(f) of the Florida Statutes. The trial court dismissed Abril's actions seeking compensatory damages for mental anguish and emotional distress based upon Florida's impact rule. Abril's lawsuit was reinstated after Florida's Supreme Court determined that violation of Florida's HIV confidentiality statute is the type of tort for which the

*only* reasonably foreseeable damages are emotional distress damages. <u>Abril</u>, 969 So. 2d at 207-8.

### D. *Abril distinguished*

While Golzar's damages stemming from Wackenhut's failure to properly investigate Owens's prior California conviction are, like Abril's damages, emotional distress damages, it can hardly be said that the *only* reasonably foreseeable damages from any negligent hiring, negligent retention, and negligent supervision tort are emotional distress damages.

Indeed, Florida jurisprudence is replete with examples of an employer being held liable for personal injury damages and economic damages for its negligent hiring, negligent retention, or negligent supervision. <u>See, e.g.,</u> <u>Tallahassee Furniture Co., Inc. v. Harrison</u>, 583 So. 2d 744 (Fla. 1st DCA 1991) (affirming a jury verdict for negligent retention where furniture deliveryman brutally attacked plaintiff in her home); <u>Abbott v. Payne</u>, 457 So. 2d 1156 (Fla. 4th DCA 1984) (reversing order granting motion to dismiss where plaintiff sufficiently stated a cause of action for negligent hiring when a former employer broke into plaintiff's home at night and physically assaulted her); <u>Williams v. Feather Sound, Inc.</u>, 386 So. 2d 1238 (Fla. 2d DCA 1980) (reversing order granting summary judgment where condominium negligently hired a maintenance man who assaulted a tenant).

Plainly, unlike in <u>Abril</u>, economic damages, as well as emotional distress damages, are reasonably foreseeable when an employer fails to screen and vet an employee properly. We do not view the torts of negligent hiring, negligent retention, and negligent supervision as torts in which the only foreseeable damages are non-economic damages; therefore, we conclude that <u>Abril</u> is distinguishable.[5]

### a. *"Merger" of Owens's and Wakenhut's conduct*

Understandably, but without citing any precedent, Golzar urges us essentially to *merge* Owens's intentional conduct (that is, his invasion of Golzar's privacy) with Wackenhut's negligent conduct, without differentiating between the two parties' distinct actions. Golzar argues that when the only foreseeable damages stemming from an employee's intentional conduct are non-economic, then Florida's impact rule should have no applicability to the employer's negligent conduct that facilitated the employee's intentional conduct.

---

[5] In his compelling dissent, J. Shepherd suggests that modern Florida Supreme Court jurisprudence requires the application of the impact rule on an ad-hoc, case-by-case basis. And, because "[n]one of the legal or historically advanced policy reasons for the application of the impact rule" are present, the impact rule should go into torpor in this case. While J. Shepherd might be correct in "divin[ing] what the Florida Supreme Court would do if presented with the facts of our case," we are reminded of the late economist Edgar Fiedler's admonition: He who lives by the crystal ball soon learns to eat ground glass. We are more reticent than J. Shepherd to relegate the impact *rule* to the impact *suggestion*. Until either the Legislature or the Florida Supreme Court abrogates it, the impact rule remains essential to a plaintiff seeking recovery for emotional distress damages, i.e., in order to recover non-economic emotional distress damages, a plaintiff must show that the emotional distress flowed from physical injuries sustained in an impact. <u>Humana of Fla., Inc.</u>, 652 So. 2d at 363.

Almost by definition, however, the torts of negligent hiring, negligent retention, and negligent supervision are fundamentally distinct from the employee's underlying, intentional wrong. Florida's impact rule applies only to the torts of negligent hiring, negligent retention, and negligent supervision. In our view, blurring the distinction would be the functional equivalent of imposing vicarious liability on an employer for the intentional tortious conduct of its employee. Florida courts have consistently rejected this notion. See Hennagan v. Dep't of Highway Safety & Motor Vehicles, 467 So. 2d 748, 750 (Fla. 1st DCA 1985). We do not read Abril so as to require such a "merger."

### b. *Vicarious liability*

Finally, Golzar suggests that Abril can be read to impose vicarious liability on an employer when it is foreseeable that the damages resulting from both (i) the employee's intentional tort, and (ii) the employer's negligent hiring, are purely non-economic.

We do not read Abril as standing for the proposition that an employer is somehow *vicariously liable* for the intentional tort of its employee. Importantly, in Abril, the Department of Corrections was vicariously responsible pursuant to statute for the negligence of the laboratory. 969 So. 2d at 204. No such statutory undertaking is implicated in this case.

There is no indication in <u>Abril</u>, or in any other case cited to us, that an employer should be vicariously liable for an intentional tort of its employee committed outside the scope of employment. <u>See</u> <u>Goss v. Human Servs. Assocs, Inc.</u>, 79 So. 3d 127, 132 (Fla. 5th DCA 2012).

## IV. Conclusion

While we are indeed sympathetic with Golzar in this case, and find Owens's behavior to be reprehensible, in our view, these considerations are not sufficient to waive the applicability of Florida's impact rule to the torts of negligent hiring, negligent retention, and negligent supervision.

We reverse the judgment on appeal and remand with instructions to enter final judgment in favor of Wackenhut.

ROTHENBERG, J., concurs.

<u>G4S Secure Solutions USA, Inc., etc. v. Taliya Golzar</u>
Case No.: 3D14-2588

SHEPHERD J., dissenting.

Respectfully, there is no principled reason to excuse G4S Secure Solutions USA, Inc., from responsibility for the invasion of privacy Taliya Golzar suffered in this case at the hands of one of its employees. The Florida Supreme Court has long acknowledged that the impact rule "generally is inapplicable to recognized torts in

which damages are often predominantly emotional." <u>Kush v. Lloyd</u>, 616 So. 2d 415, 422 (Fla. 1992). Included early on among those exceptions were "emotional distress damages for torts such as invasion of privacy." <u>Gracey v. Eaker</u>, 837 So. 2d 348, 356 (Fla. 2002) (citing <u>Kush</u> at 422-23). Taliya suffered an invasion of her privacy in this case. G4S had a "special professional duty" to each resident of the gated community which it was engaged to protect. <u>See</u> <u>Rowell v. Holt</u>, 850 So. 2d 474, 479 (Fla. 2003) (holding that a public defender owed a special professional duty to a client who had been unlawfully detained to obtain his immediate release). It was foreseeable that a security guard who had once been a Peeping Tom would engage in such conduct again. None of the legal or historically advanced policy reasons for the application of the impact rule are served by denying Taliya recovery from G4S in this case. Let me explain.

<u>A.</u>

This is a simple negligence case. After the evidence was adduced by the parties at trial, the only viable count remaining at the close of the evidence was the negligent hiring count.[6] It is true that our High Court has not yet approved recovery of damages in a claim for psychological trauma alone where the

---

[6] The majority accurately depicts the differences between negligent hiring, negligent supervision and negligent retention claims in footnote 4. The trial court directed a verdict in favor of G4S on the negligent supervision claim during trial. Taliya has not cross-appealed that ruling.

proximate cause of the injury was negligent hiring. The fact connotes only that such a case has not come before the Court. However, our High Court has approved the recovery of compensatory damages in a wide variety of other types of simple negligence cases where, as in the case before us, the only injury claimed was psychological trauma. See Fla. Dep't of Corr. v. Abril, 969 So. 2d 201, 204 (Fla. 2007) (holding the impact rule was inapplicable in an action for negligent failure of a testing laboratory to ensure confidentiality and privacy of HIV test results); see also Holt, 850 So. 2d at 481 (holding the impact rule was inapplicable to a legal malpractice case against the Office of Public Defender for failure to obtain immediate release of imprisoned client); Gracey, 837 So. 2d at 352-53 (holding the impact rule was inapplicable in a negligence action against a psychotherapist, alleging breach of fiduciary and statutory duty of confidentiality to patient); Hagan v. Coca-Cola Bottling Co., 804 So. 2d 1234, 1236 (Fla. 2001) (creating an exception for ingestion of a contaminated food or beverage); Tanner v. Hartog, 696 So. 2d 705, 708 (Fla. 1997) (holding the impact rule was inapplicable to a claim of negligent stillbirth); Gonzalez v. Metro. Dade Cty. Pub. Health Trust, 651 So. 2d 673 (Fla. 1995) (creating an exception for negligent handling of a corpse); Kush, 616 So. 2d at 423 (holding the impact rule was inapplicable to a parent's claim for wrongful birth of their severely deformed child).

These cases establish a strong precedential authority for an exception in this case. All of them are cases in which the only injury suffered by the plaintiff was emotional. So it is here. At the time of the incident, Taliya was a minor who lived with her parents in Old Cutler Bay, an exclusive waterfront community located in Miami-Dade County. Years before this incident, Miami-Dade County formed Old Cutler Bay into a Security Guard Special Taxing District and contracted with G4S to provide security service.[7] It is not disputable that G4S owed a duty to Taliya and her family to protect them from unwanted intruders and criminals who might wish to do harm to them or their property. They paid for the service. G4S' employee, Eric Michael Owens, perpetrated a crime on Taliya. He was convicted of two counts of video voyeurism, precisely what G4S was hired to prevent.[8]

_____

[7] There are twenty such similar Security Guard Special Taxing Districts in the County, most also consisting of exclusive waterfront communities. The purpose of the special district is to share the cost for the provision of security services in the respective communities. See https://www.miamidade.gov/parks/library/notices/special-taxing-district-security-guards.pdf (last visited June 25, 2016).

[8] Under Florida law,

> A person commits the offense of video voyeurism if that person:
> (a) For his or her own amusement, entertainment, sexual arousal, gratification, or profit, or for the purpose of degrading or abusing another person, intentionally uses or installs an imaging device to secretly view, broadcast, or record a person, without that person's knowledge and consent, who is dressing, undressing, or privately exposing the body, at a place and time when that person has a reasonable expectation of privacy.

§ 810.145(2)(a), Fla. Stat. (2012).

The principal retort from the majority to this factual syllogism and mountain of supporting authority is: "[Well], we have been provided no Florida case in which a court has refused to apply the impact rule to claims of negligent hiring, negligent retention and negligent supervision." Of course not. The reason is that the Florida Supreme Court has proceeded in this area on an ad hoc, "case-by-case basis." Abril, 884 So. 2d at 210 ("In short, the reach of the rule has been reduced on an ad hoc basis as the court has weighed the merits of applying or not applying the rule to particular circumstances.").[9] I can appreciate the majority's reticence to go where our Supreme Court has not yet gone. In one respect, we are being asked to divine what the Florida Supreme Court would do if presented with the facts of our case. However, ours is an independent constitutional court, and we have a judicial responsibility to decide. See Ard v. Ard, 395 So. 2d 586, 587-88 (Fla. 1st DCA 1981) (concluding that a district could not "avoid judicial responsibility" to determine whether the relationship between spousal immunity from suit, as recognized by the Florida Supreme Court, and parental immunity from suit, where

---

[9] The majority draws our attention to four United States District Court cases in which the courts applied the impact rule to prohibit recovery for either negligent retention or supervision of an employee. See Maj. Op. at p. 9. However, most of them pre-date the more recent expansions of the rule cited here, and, of course, they are not binding on us. I also find puzzling the majority's assertion at page 10 that because emotional distress damages are "[not] the only reasonably foreseeable damages from any negligent hiring, negligent retention, and negligent supervision tort," that such a claim is barred when the harm is of a type not typically accompanied by a physical impact, such as is the case here. This would seem to be a non-sequitur.

17

the Florida Supreme Court had only acknowledged the latter by dictum). I would draw on the guidance we have and affirm the jury verdict on liability in this case.

B.

Because I would affirm the jury verdict on liability in this case, I must address G4S' alternate argument on appeal that it is entitled to a new trial on compensatory damages or a remittitur of the award. Here, some chronology is important.

G4S timely served its Motion to Set Aside the Jury Verdict and Judgment and to Enter Judgment in Accordance with the Motion for Directed Verdict[10] or, Alternative Motion for New Trial on May 29, 2014, fifteen days after the jury returned its verdict in this case. See Fla. R. Civ. P. 1.530(b). G4S' Alternative Motion for New Trial did not include a request to the trial court to consider ordering a remittitur or a new trial under section 768.74 of the Florida Statutes (2014), on the ground that the verdict was "excessive." See § 768.74(1)-(5). Nor did the Alternative Motion for New Trial seek relief on any of the long-standing common law grounds that "the verdict shocks the judicial conscience," "the jury [was] unduly influenced by passion or prejudice," or that the verdict was "contrary to the manifest weight of the evidence." See Brown v. Estate of Stuckey, 749 So. 2d 490, 498 (Fla. 1999). Instead, G4S' Alternative Motion for a New Trial

---

[10] These portions of the motion all relate to the impact rule issue previously addressed.

18

articulated two very **specific** "reasons" upon which it argued "the Court should grant the Defendant a new trial . . . : (1) the issue of punitive damages was improperly submitted to the jury, and (2) the statements from the website of Defendant's sister company, G4S Compliance and Investigations . . . , as well as a document labeled 'Wackenhut Screening Solutions' ('collectively Website Statements') should have been excluded." (Emphasis added.) It was these two specific "errors" which G4S claimed "prejudiced" it and caused "a grossly excessive damage award."

Sixty-three days later, on July 31, 2014, G4S launched an effort to expand the reasons it had earlier stated as the grounds for a new trial, first by serving a Motion for Leave to Amend Its Alterative Motion for New Trial, and five days after that, an Amended Motion for Leave to Amend Its Alternative Motion for New Trial. G4S' Motion for Leave to Amend sought only to "add a request for remittitur" to its presently pending motion, citing for the first time to section 768.74, which authorizes such a motion. G4S' Amended Motion for Leave to Amend sought to expand the scope of the original Alternative Motion for New Trial even further beyond the two specific "errors" originally asserted by invoking the remaining subsections of section 768.74, making for the first time, the general allegation that the "verdict is excessive based upon the evidence adduced at trial." Attached to G4S' Amended Motion for Leave to Amend was a proposed, restated

19

Motion to Set Aside the Jury Verdict and Judgment and to Enter Judgment in Accordance with the Motion for Directed Verdict or, Alternative Motion for New Trial, which recited every section of its original motion en haec verba, but now included a brand new six-page subsection III.A., seeking both remittitur and making a full-throated argument for new trial on all of the grounds that it had omitted from its original motion. The conclusion to the restated motion acknowledged that these new grounds were, in fact, "additional reasons" for granting a new trial. After reviewing Taliya's response to the three motions, including her objection to the motions to amend on the ground of timeliness, the trial court denied all of G4S' post-trial motions.

With respect to the two motions to amend G4S' timely served Alterative Motion for New Trial, I believe the trial court was well within its discretion to deny the motions on timeliness grounds as urged by Taliya. A motion for remittitur under section 768.74 is "'essentially a conditional motion for a new trial.'" See Hauss v. Waxman, 866 So. 2d 758, 759 (Fla. 4th DCA 2004) (quoting Fire & Cas. Ins. Co. of Conn. v. Sealey, 810 So. 2d 988, 991 (Fla. 1st DCA 2002)). Because a motion for remittitur is a conditional motion for new trial, it is subject to Florida Rule of Civil Procedure 1.530(b) and the motion must be filed within fifteen days after the jury renders the verdict. The motions in this case were served eighty-three and seventy-eight days respectively, after the jury returned its verdict.

20

The test for determining whether the trial court abused its discretion in denying these two motions is well established:

> Discretion, in this sense, is abused when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.

Canakaris v. Canakaris, 382 So. 2d 1197, 1203 (Fla. 1980) (quoting Delno v. Market Street Railway Company, 124 F.2d 965, 967 (9th Cir. 1942)).

In analyzing this issue, it is important to separate the timeliness objection raised by Taliya in opposition to the two motions from the merits of the motions. If the trial judge properly exercised his discretion in denying the motions to amend on timeliness grounds, then it is not necessary to reach the merits of the arguments made in the motions. In my view, it is not necessary to reach the merits of the motions. A careful study of G4S's Alternative Motion for a New Trial and proposed amendments allow but one inference: G4S was purposefully and discreetly seeking to add grounds to its Alternative Motion for New Trial that it had previously overlooked. Taliya called G4S on the tactic in her response to the post-trial motions. The trial judge expressly acknowledged the response in his order denying G4S' post-trial motions. I do not believe it can be said that the trial court acted "arbitrarily, fancifully or unreasonably" in denying the late filed motions. See Canakaris at 1203 ("If reasonable men could differ as to the

21

propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.").

As to the narrow grounds that were set forth in G4S' timely filed Alternative Motion for New Trial, I have no difficulty concluding that the trial judge properly exercised his discretion in denying the motion for new trial made on those grounds. The extensiveness of the two motions to amend suggests that G4S itself recognized the inadequacy of its own timely filed motion.

## CONCLUSION

The impact rule serves the salutary purpose of limiting recovery for emotional damages "where we are most comfortable that real emotional distress has occurred." Abril, 969 So. 2d at 212. In this case, however, the majority creates an artificial impact rule limitation on a claimant's ability to obtain redress from the entity that put in motion the instrument of a harm which has been long recognized as being compensable in our courts. I see no principled reason to apply the impact rule to the facts of this case.

22